Ernest T. PITZER et al., Appellants,

v.

CITY OF ABILENE, Appellee.

No. 3462.

Court of Civil Appeals of Texas.

Eastland.

April 10, 1959.

Rehearing Denied May 1, 1959.

Eplen & Daniel, Abilene, for appellants.

Dan T. Sorrells, City Atty., Abilene, for appellee.

COLLINGS, Justice.

Ernest T. Pitzer and 58 others, as plaintiffs, brought this suit against the City of Abilene. Plaintiffs sought a declaratory judgment declaring their rights under a written contract made by their representatives with the City of Abilene in December of 1956 under which the city agreed not to annex territory adjacent to the city designated as East Abilene, for a period of five years after completion of certain water and sewer lines. Plaintiffs also sought judgment declaring void an ordinance passed by the City of Abilene on December 23, 1957, annexing East Abilene in violation of the 1956 agreement. Plaintiffs are all either residents and/or property owners in the territory designated as East Abilene, or are developers and agents in charge of Lytle Shores Addition which is included within the boundaries of East Abilene. The City of Abilene defended upon the ground that the contract not to annex was void because the city could not abrogate its governmental power of annexation. The case was submitted to the court on written stipulation as to all material facts and judgment was rendered in favor of the city. The plaintiffs have appealed.

Points of error urged by appellants are, in effect, that the court (1) erred in failing to hold valid and to enforce the December, 1956, agreement; (2) erred in failing to hold that the annexation ordinance was void because the city was estopped from annexing East Abilene except in keeping with the 1956 agreement, and (3) erred in failing to hold that the city was estopped from annexing, except under the terms of the agreement, regardless of the validity of the agreement not to annex, because of advantages and benefits thereby acquired and accruing to the city.

On January 15, 1954, the West Texas Utilities Company in a letter addressed to the City Commission of the City of Abilene indicated that it was ready to take bids on water and sewer lines on the Lytle Shores Development and that all plans and specifications had been approved by proper officials of the City of Abilene. Lytle Shores Development is a part of the territory included in what is referred to as East Abilene. The utilities company indicated that it did not desire to bring Lytle Shores Development Addition into the city at that time and that, therefore, no request was made to the city for contribution then customarily made by the city on the construction of these distribution systems, but that when the water and sewer lines were completed the utilities company was willing to deliver same free of all incumbrances to the city for operation and maintenance, the city to receive its regular charges for water and sewer services rendered outside of the city limits. It was indicated in the letter that if the city agreed to this procedure, the utilities company would proceed to receive bids and complete such construction work as speedily as possible. The City of Abilene accepted the above proposal and the utility lines were constructed at a cost of $134,500 and delivered to the city and placed in operation during the year of 1955. The December, 1956, agreement confirmed the fact that it was understood by the city and the utilities company that Lytle Shores Development Addition would not be annexed to the City of Abilene for a period of five years from the time of the completion of the utility lines.

On July 20, 1956, the City of Abilene by its Board of Commissioners passed on first reading an ordinance annexing 34.3 square miles of territory which included East Abilene. The territory designated as East Abilene contained 760 acres. This pro-

posed ordinance of annexation was never passed on second or final reading. Most of the above territory which the city proposed to annex was rural and considerable objection arose from its inhabitants. In response to this objection, the City Commissioners made statements to the effect that the proposed ordinance of annexation was at the request of the Abilene School Board because the school board had determined that it was necessary, or expedient, to extend its boundary lines before the calling of an election to divorce the school system from the city government. At a meeting of the citizens of the territory, proposed to be annexed, it was represented that the school officials involved had agreed to the annexation for school purposes only. In view of this fact it was decided by the majority of the group not to oppose annexation of the territory if limited to school purposes only. Some of the group, including residents of East Abilene, helped circulate a petition to call an election for divorcement of the school system from the government of the City of Abilene. On September 7, 1956, the Abilene City Board adopted on final reading four ordinances annexing for school purposes, only, territory in four common school districts which was included in the July 20 ordinance passed on first reading only and included the territory designated as East Abilene.

Subsequent to September 7, 1956, a proposal was made by one of the commissioners of the City of Abilene at a board meeting that the city proceed to annex certain territory including East Abilene for all purposes. When this fact became known, citizens of East Abilene filed their petition to incorporate that territory, and the County Judge of Taylor County set an election on the question for December 29, 1956. Thereupon the City Commission designated one of its members, Mr. Robert J. Tiffany, to discuss and negotiate the matter with representatives of East Abilene. These negotiations were carried out and resulted in the compromise agreement dated December 20, 1956, which agreement is the basis of this suit. The agreement was unanimously approved by the City Commission and contained the following provisions:

"It is now proposed as a compromise that everything remain as it is in status quo with the actual legal rights that each party has of this date unchanged with the exception that an election to incorporate 'East Abilene' on the 29th of December shall in some manner be called off, all provided that the City immediately agrees that it will postpone any action to bring the East Abilene area into the city limits until it is more mutually beneficial, that is, has developed to the extent of having at least 200 houses (which is some less than $\frac{1}{3}$ of the potential of the area), or for a period of at least three years after January 2, 1957, whichever came first. It will be formally recognized by the City that this coincides with the earliest time that the Lytle Shores area itself could be brought into the City limits all as established in the original agreement between Lytle Shores and the City in its proprietary capacity of furnishing water and sewer service and more fully confirmed by signed statements of each individual party connected therewith and attached hereto for records of the City. It is established that part of the water and sewer system was completed and paid for in the latter part of December, 1954, but such lines were not finally completed and in full service until during the year 1955. It is therefore mutually agreed that the five years as mentioned in the agreement will start January 2, 1955."

In keeping with the above agreement, the election for the incorporation of East Abilene was called off. The situation thereafter remained in status quo until November 1, 1957, when the City Commissioners passed on first reading, and on December 23, 1957, finally adopted, an ordinance an-

nexing East Abilene and other territory. That ordinance is the one here under attack. It is admitted that the citizens of East Abilene believed on August 8, 1956, when they decided not to oppose the annexation of their territory for school purposes only, that such territory would not be annexed by the City of Abilene until the expiration of a five year period from January 2, 1955. It is admitted that the City Commission and school officials co-operated in working out the arrangements for annexation of the territory in question for school purposes only. It is admitted that the officials of the City of Abilene knew on December 20, 1956, when they made the compromise agreement, that the citizens of East Abilene were relying upon the city to carry out that agreement. The reason urged by the City of Abilene for repudiating the 1956 agreement is that the board which made the agreement had no legal power to bind its successors in office not to exercise its governmental power of annexation. The City of Abilene now claims all title and the rights in the water and sewer lines in Lytle Shores Development Addition although there has never been any formal transfer of title thereto. No permanent improvements have been made by the City of Abilene in East Abilene since January 1, 1958, and the city has never returned or offered to return any part of said lines or the cost thereof.

■■ The annexation of territory by a municipality is the exercise of a governmental power. As a general rule the governing body of a municipal corporation may not by contract bind successors in office in the exercise of a purely governmental power. 30–A Tex.Jur., Sec. 351, p. 350; Sayles v. City of Abilene, Tex.Civ. App., 290 S.W. 239, affirmed, Tex.Com. App., 295 S.W. 578. However, it is recognized that there are exceptions to the above-stated rule. Krause v. City of El Paso, 101 Tex. 211, 106 S.W. 121, 14 L.R. A.,N.S., 582. It is stated in 63 C.J.S. Municipal Corporations § 987, p. 549, as follows:

"While the question of whether a municipal council * * * may bind successors by contract is generally determined according to the nature of the power exercised in making the contract, a doubt has been expressed as to whether a simple classification of contracts as involving or not involving only the proprietary or business powers of a municipal corporation is an accurate test of the powers to make a contract binding on successors; and it has been held, without reference to this classification, that a contract made by the council or other governing body of a municipal corporation is neither void nor voidable merely because some of its executory features may extend beyond the term of the office of the members of the governing body where, at the time of its execution, it is· apparently fair, just, and reasonable and is prompted by the necessities of the situation or in its nature is advantageous to the municipality."

The exception to the rule is also recognized by our Supreme Court in the case of the City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308, 312. The general rule was held applicable in the cited case but it was stated by the Court that:

"* * * exception is properly made to the general rule which has been discussed, because there is added to the equities existing in favor of the individual on account of his reliance and injury the established and compelling equitable principle that the city may not, after having accepted benefit from the unauthorized act, repudiate it so far as it imposes an obligation upon it or is disadvantageous to it."

It was also stated by the Court in the Deutsch case that the exception was not there applied because the city received no benefits from the unauthorized acts of its representatives. See also City of Dallas v. Rosenthal, Tex.Civ.App., 239 S.W.2d 636 (RNRE). In the instant case the City of

Abilene did receive benefits from the unauthorized acts and agreements of its officials.

■ In consideration of its agreement not to annex Lytle Shores Development Addition for a period of five years, the City of Abilene acquired utility lines constructed at a cost of $134,500. The agreement not to annex involved a governmental function. The acquiring of the utility lines involved a proprietary function. In such a situation it was held by this court in the case of Boiles v. City of Abilene, Tex. Civ.App., 276 S.W.2d 992 (Writ Ref.), that the city was estopped to deny the validity of its contract.

■ The December, 1956, agreement by which the City of Abilene agreed not to annex the 760 acres designated as East Abilene included and reaffirmed the agreement concerning the Lytle Shores Development Addition. The period for which the city agreed not to annex the entire 760 acres was made to coincide with the previous agreement concerning Lytle Shores Addition, and it was agreed that the beginning of the five year period was January 2, 1955. In addition to the benefits acquired in the previous Lytle Shores' agreement, the City of Abilene acquired still further benef..s and advantages under the December, 1956, contract.

■ By the terms of the December, 1956, contract the Abilene City Commission agreed not to annex East Abilene for the stated three year period in consideration "that an election to incorporate 'East Abilene' on December 29, shall in some manner be called off." Obviously, the Abilene City Commission was greatly concerned about the election which had been called to incorporate East Abilene. It was evidently considered that the city was faced with the possibility of losing the right to annex East Abilene forever. A municipality does not have power to annex territory within the boundaries of another validly existing municipal corpora-

tion. City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928. When the citizens of East Abilene commenced proceedings to incorporate as a separate municipality, there was no pending proceeding by the City of Abilene to annex the territory. The City of Abilene had previously passed on first reading an ordinance to annex 34.3 square miles of territory which included East Abilene, but, after violent objection, this ordinance was abandoned and the city passed on first, second and final reading a substituted ordinance which annexed the territory in question for school purposes only. The citizens of East Abilene, therefore, first commenced proceedings asserting authority over the territory. They thereby acquired jurisdiction which could not be defeated by the subsequent efforts of the City of Abilene to annex. Beyer v. Templeton, 147 Tex. 94, 212 S.W.2d 134; State ex rel. George v. Baker, 120 Tex. 307, 40 S.W.2d 41; State ex rel. Binz v. City of San Antonio, Tex.Civ.App., 147 S.W.2d 551. The city tried to make the best of the serious situation by entering into the December, 1956, compromise contract. The city was willing to forego an immediate, but extremely uncertain right, if any, to annex East Abilene in order to secure the right to annex, or at least to make the right certain and uncontested at a later date. The record shows that the election was called off.

The citizens of East Abilene agreed to and did forego the exercise of their political right to have an election looking to the establishment of a separate and distinct municipal corporation. This was a surrender by the citizens of East Abilene of a valuable political or governmental right of equal importance and standing with the governmental power of the City of Abilene to annex. The City of Abilene thereby acquired substantial benefit and advantage in consideration of its promise not to annex East Abilene for a period of three years. The contract was fair, just and reasonable. It was "prompted by the necessity of the

situation", and it was advantageous to the City of Abilene. It would be unjust and inequitable to permit the city to now refuse to abide by its solemn and considered agreement by which it deprived the citizens of East Abilene of a valuable political or governmental right and acquired and garnered unto itself substantial benefits and advantages.

We hold that the City of Abilene is estopped from annexing the territory described as East Abilene except in keeping with the December, 1956, contract and that the court erred in failing to hold the ordinance annexing that territory void.

The judgment of the trial court is reversed and judgment is here rendered for appellants.

GRISSOM, C. J., did not participate in this decision.